IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL CASE NO. |
| | : | 1:14-CR-00228-AT-AJB |
| | : | |
| JAMES BLOCKER | : | |

## SENTENCING MEMORANDUM

COMES NOW Defendant James Blocker, by and through undersigned counsel of record, and files this Sentencing Memorandum. Attached hereto are Mr. Blocker's statement of responsibility (Exhibit A) and numerous letters of support from his family and members of the community (Exhibit C).

## Introduction

Mr. Blocker is 39 years old, well-educated and highly skilled. He has no prior convictions. Mr. Blocker's relationship with his son, Bert, has been strained as a result of Mr. Blocker's participation in writing the computer code for the Appbucket online marketplace and maintaining the operation of the Appbucket computer servers. Also, the stress of facing this case and financial strain greatly contributed to his marriage to Mary Blocker ending in divorce. While Mr. Blocker understands that a sentence involving time in custody is likely, he has already

begun to experience the consequences of his actions personally, professionally, and financially.

Mr. Blocker's health has always been a concern, and it will continue to be a challenge during any time in custody. Exhibit B is a letter from his doctor, Dr. Sreedevi Guttikonda, describing the risks and challenges that Mr. Blocker faces with Type 1 diabetes. As a "brittle diabetic," Mr. Blocker has to monitor his blood sugar levels constantly and faces many immediate health risks if his condition is not properly managed. The struggle with health issues caused Mr. Blocker to miss an excessive number of school days as a teenager and delayed his graduation while doctors determined his illness. Type 1 diabetes has also caused high blood pressure and high cholesterol, requiring daily medication to maintain his health.

Despite facing a potential custodial sentence in this case, Mr. Blocker has been an active and positive member of his community and strives to be as active as possible in the life of his son, Bert. He works to be a positive role model for Bert even as he accepts responsibility for his actions that led him to this point, and recognizes the effect that those actions have had and will continue to have on his family.

## Calculation of the Infringement Amount

The written plea agreement states that the infringement amount is approximately $754,519.21.  See plea agreement at ¶ 65.  This number "was determined by calculating the number of times that app was downloaded from Appbucket and multiplying that number by the retail price of the authentic app. The infringement amount for the entire case is then calculated by adding the infringement amounts for each of the individual apps." Id.

Calculation of the infringement amount in this case is necessarily speculative.  For lack of a better method of determining actual download numbers, the Government has relied on spreadsheets located on devices in the custody of Nicholas Narbone[1] and assigned an estimated retail value for each app based on current list price at other app marketplaces.  While Mr. Blocker agrees that this is the most reliable available method of estimating the number of app downloads and their approximate retail value, this method results in an estimated amount that may substantially exceed the actual pecuniary harm to the copyright or trademark owners.

Under USSG § 2B5.3, note 5(C), the Court may depart from the sentencing guidelines where "the method used to calculate the infringement amount is based

---

1  The idea and purpose for Appbucket originated with Narbone, who is scheduled for sentencing on March 15, 2018 at 10:30 AM.

upon a formula or extrapolation that results in an estimated amount that may substantially exceed the actual pecuniary harm to the copyright or trademark owner." Here, Appbucket did not charge users per app downloaded—users paid a flat monthly fee to download as many apps as they desired. Users could download apps freely even if they had no intention of using the app since there was no fee.

As a result, users would be highly prone to download apps that they otherwise would not have downloaded if there was a charge. It is also unclear whether the download numbers taken from Narbone's devices include duplicate downloads of apps to the same device or to numerous devices owned by the same user—in that case a user would not need to pay for an app multiple times.

Thus, owners of the apps did not necessarily lose the revenue reflected in the value of the apps. People who would not have accessed many of the apps, downloaded the apps because there was no fee. This argument is bolstered by the note in the Background section that "the sentences for defendants convicted of intellectual property offenses should reflect the nature and magnitude of the pecuniary harm caused by their crimes." USSG § 2B5.3.

Finally, it is Counsel's understanding that the apps available on Appbucket did not alter any functionality relating to banner ads contained within the downloaded apps. For example, in the legitimate marketplaces for apps, many

4

developers receive ongoing revenue from banner ads displayed to app users.  Here, many apps downloaded from Appbucket which contained ads would still have displayed those ads to users.  Since Appbucket did not alter this functionality, the ad statistics would still have been reported to the ad services, and app owners would have received compensation for this.  This illustrates the speculative nature of the estimated infringement amount, since (1) it is difficult to correlate each download to a lost sale, and (2) some app owners likely received ad revenue from in-app banners displayed to Appbucket users.

## Lack of Substantial Profit

According to the Presentence Report at ¶ 14, Narbone received $61,763.48 in subscription payments through Paypal between August 20, 2010 and December 17, 2010.  He received an additional $20,596.00 in subscriptions through Digital River between December 18, 2010 and July 26, 2011.  As to Mr. Blocker, however, Paypal records reveal that Narbone paid approximately $7,222 to him,[2] and this is all Mr. Blocker ever received for his part in this offense.  It appears that Narbone controlled the proceeds of the conspiracy and kept most of it for himself even though Mr. Blocker was an authorized user of the Paypal account—thus, Mr. Blocker's access was limited to an administrative and technical support role.

---

2  Presentence Report at ¶ 26.

## Imposition of a Reasonable Sentence

Here, a sentence of **18 months** is most appropriate. In imposing a sentence the Court must first properly calculate the sentencing guidelines. <u>United States v. Talley</u>, 431 F.3d 784, 786 (11th Cir. 2005) (abrogated on other grounds), <u>Rita v. United States</u>, 551 U.S. 338 (2007). Secondly, the Court must consider the statutory factors outlined in 18 U.S.C. § 3553 to determine a reasonable sentence. (<u>Id</u>.). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; **Mr. Blocker has no criminal history and is unlikely to re-offend, as this will be his first time serving any time in custody and he has been greatly affected by the consequences for himself and his family.**
> (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; **18 months is a significant custodial sentence that will promote respect for the law; even a software developer involved in infringing activity will be punished with federal prison time.**
> (3) the need for deterrence; **Mr. Blocker himself is greatly deterred from re-offending already, and any custodial sentence will serve to deter others.**
> (4) the need to protect the public;
> (5) the need to provide the defendant with needed educational or vocational training or medical care; **Mr. Blocker's health will require significant monitoring, and a longer sentence will increase the risk of catastrophic health issues.**
> (6) the kinds of sentences available; **the Court should consider alternative sentences such as supervised release or community service directing Mr. Blocker to teach computer classes to those in need.**
> (7) the Sentencing Guidelines range; **the guidelines have been presented, and the estimated infringement amount overstates the**

**pecuniary harm to copyright holders.  Under these circumstances, the Court should not rely on the guidelines.**
(8)    pertinent policy statements of the Sentencing Commission; **the Commission has authorized departure under** USSG § 2B5.3.
(9)    the need to avoid unwanted sentencing disparities; **addressed in further detail below.**
(10)   the need to provide restitution to victims; **revenue loss to copyright owners is difficult to determine where an app download does not necessarily correlate to a lost sale.**

Regarding the need to avoid unwanted sentencing disparities, the Court should consider the sentences given to defendants who operated similar app marketplaces such as SnappzMarket.

I. In the Northern District of Georgia, defendant Kody Jon Peterson was sentenced to 12 months and 1 day as the creator of SnappzMarket, a conspiracy involving distribution of over one million copyrighted apps with a total retail value of over $1.7 million.  Criminal Information No. 1:14-CR-025.

II. Also in this District, defendant Joshua Taylor was sentenced to 16 months for providing the computer servers necessary to host SnappzMarket.  Criminal Indictment No. 1:14-CR-0229.

III. On the other hand, defendant Scott Walton was sentenced to 46 months for handling public relations for SnappzMarket, searching for and downloading copies of copyrighted apps, burning those to digital media, and mailing them to codefendant Gary Edwin Sharp II (whose sentencing is still pending).  Criminal

7

Indictment No. 1:14-CR-0229.  By contrast, however, the infringement amount in the SnappzMarket case exceeded $1.7 million, more than double the estimated amount in this case.

IV. Sentencing for various other defendants is pending, including Nicholas Narbone, Thomas Pace, Thomas Allen Dye, and Gary Edwin Sharp II.

A sentence of 18 months will best satisfy these factors.  Mr. Blocker is unlikely to recidivate, as he has had no issues whatsoever while on pretrial release since 2014.  Since he is 39 years old with zero criminal history points, his likelihood to commit another crime is half that of offenders with one criminal history point. See Sent'g Comm'n, Recidivism and the "First Offender," at 13-14 (May 2004).  The Court should impose the least sentence sufficient to account for the need to protect the public, and should consider the statistically low risk of recidivism presented by Mr. Blocker's history and characteristics.

## Conclusion

A sentence of 18 months would satisfy all of the § 3553 factors.  It is an appropriate period of incarceration that will serve to further deter and rehabilitate Mr. Blocker.  He has never served time in custody before and he is highly motivated to be a better father and avoid any incarceration in the future.  The

collateral consequences of a federal conviction will further serve as a reminder never to put himself or his family in a situation like this again.

Respectfully submitted, this the 12th day of March, 2018.

By: /s/ Kevin A. Chastine
Kevin A. Chastine
Georgia Bar No. 120203

1800 Peachtree St. NW
Suite 300
Atlanta, GA 30309
Kevin@CDFLegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL CASE NO. |
| | : | 1:14-CR-00228-AT-AJB |
| | : | |
| JAMES BLOCKER | : | |

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the following Sentencing Memorandum, this day, upon the following, by the federal electronic filing system delivery: Christopher Bly, Esq.

United States Attorney's Office
Northern District of Georgia
75 Spring Street, S.W., 6th Floor
Atlanta, GA 30303

This the 12th day of March, 2018.

By: __/s/ Kevin A. Chastine
Kevin A. Chastine
Georgia Bar No. 120203

1800 Peachtree St. NW
Suite 300
Atlanta, GA 30309